## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

United States of America,

**Plaintiff**

v.

Edison Burgos Montes, <u>et al.</u>,

**Defendant(s)**

**CIVIL NO.** 06-009-01 (JAG)

## OPINION AND ORDER

Pending before the Court is Edison Burgos Montes' Motion to Suppress Evidence Obtained from Title III Wiretap. (Docket No. 287). For the reasons stated below said motion is hereby **DENIED**.

### PROCEDURAL BACKGROUND

On January 12, 2006, an Indictment was returned against Edison Burgos Montes ("Defendant") and another co-defendant, who is presently absconded, for a conspiracy related to narcotic trafficking offenses in violation of Title 21 U.S.C. § 841(a)(1) and 846 (Count One); importing into the customs territory of the United States controlled substances, in violation of Title 21 U.S.C. § 952(a) and 963 (Count Two); and forfeiture allegations as a result of the violations in above counts (Count Three).

On May 18, 2006, a Superseding Indictment was returned wherein Defendant was in addition charged with having killed

with malice aforethought, knowingly, intentionally, unlawfully and with premeditation Ms. Madelin Semidey Morales ("CI #3") to retaliate against her for providing to a law enforcement officer information pertaining to the commission or possible commission of crimes related to the importation and conspiracy to possess with intent to distribute cocaine, a violation of 18 U.S.C. § 1513(a)(1)(B).[1] (Docket No. 64). Defendant is currently facing the death penalty.

As evidence against him, the Government seeks to introduce nine recorded conversations obtained through a wiretap authorized under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.* ("Title III"). The Application for Interception of Wire Communications ("Application") was filed under 05-mc-140 (CCC) and was authorized by an Order issued on September 6, 2005, for a thirty day period by Judge Consuelo Cerezo. The evidence obtained from said wiretap was made part of the instant criminal case.

Defendant has filed a Motion to Suppress Evidence Obtained from Title III Wiretap ("Motion to Suppress"). (Docket No. 287). In it, he raises the following issues:

---

[1] The forfeiture allegations became Count Five of the Superseding Indictment.

a. that the application and the order for the wiretap were deficient for failure to comply with mandatory statutory procedural requirements;

b. that the recordings were not immediately sealed;

c. that the affidavit and the application failed to establish the necessity of the wiretap;

d. that the affidavit was materially misleading as to CI #3's relationship with Defendant;

e. that the affidavit failed to mention other individuals;

f. that the affidavit was based on stale information;

g. that the affidavit failed to contain facts of reliability of the informants.

The Government avers in its Opposition that it complied with all statutory procedural requirements, properly established the necessity of the wiretap and did not conceal information regarding CI #3. (Docket No. 309). It also rebutted the rest of the assertions made by Defendant in his motion.

Both the Motion to Suppress and the Government's Opposition were referred to a Magistrate Judge for a Report and Recommendation. (Docket No. 311). The Magistrate Judge issued a Report and Recommendation advising the Court to deny the motion. (Docket No. 318). Defendant requested that the Magistrate Judge reconsider her Report and Recommendation. (Docket No. 333). Said request was denied. (Docket No. 350).

Subsequently, Defendant filed his Objections to the Report and Recommendation ("ORR"). (Docket No. 355). On April 27, 2010, a Status Conference was held before the undersigned in which the parties agreed to conduct further investigation into the matter of the sealing and that of an alleged informant. (Docket No. 377). Thereafter, the Government filed a Further Brief regarding the Title III issues. (Docket No. 382). Another Status Conference was held on June 8, 2010, in which the Court ordered an evidentiary hearing regarding these issues. (Docket No. 385). Defendant subsequently filed a supplemental motion. (Docket No. 386).

The evidentiary hearing was held on September 8, 2010. Two issues were discussed during the hearing: the sealing of the recordings and whether Neftalí Corales Casiano ("Corales Casiano"), a wiretap target, was also an informant at the time the Application was made. DEA Agent Victor M. Iglesias Moreno ("Agent Iglesias"), the case agent, testified regarding these two issues and was duly cross-examined by Defendant's counsel. The parties filed simultaneous post-hearing briefs. (Government's Post-Hearing Brief, Docket Nos. 405; Defendant's Post-Hearing Brief Docket No. 406). Defendant was granted leave to file a reply (Docket No. 412).

Having the benefit of a Magistrate Judge's Report and Recommendation, an evidentiary hearing and several exhaustive

briefs by both the Defendant and the Government, the Court will address the following issues raised by Defendant in his Motion to Suppress: the wiretap Application and Order's compliance with Title III procedural requirements; the sealing of the recordings; the necessity requirement; and, the omission of information regarding CI # 3's relationship with Defendant.[2]

### DISCUSSION

### A. The Application and Order's compliance with Title III's procedural requirements

In his Motion to Suppress, Defendant alleges that the wiretap Application failed to identify the Department of Justice officer authorizing the application, in violation of 18 U.S.C. § 2518(1) and (4). Said provisions require that both the application and the order approving the wiretap identify the person that authorized the application. Id. He also alleges that the order from the U.S. Attorney General designating the authorizing officials cited in the Application was no longer in effect at the time the application was made.

_____

[2] The court will not address the other arguments raised by Defendant in his Motion to Suppress because no timely objections were filed to the Magistrate Judge's Report and Recommendation regarding said arguments. Specifically, the Magistrate Judge determined that Defendant's contentions that the affidavit failed to mention other individuals, that it was based on stale information and that it failed to contain facts of reliability of the informants were not valid. This Court concurs.

The application in question states, in its relevant part, that:

> [p]ursuant to Section 2516 of Title 18, <u>United States Code</u>, an appropriate official of the Criminal Division, U.S. Department of Justice, having been specially designated by the Attorney General pursuant to **Order Number 2407-2001 of March 8, 2001**, has authorized this application. Attached to this application, are copies of the Attorney General's Order of special designation and the Memorandum of Authorization for this application." (Title III Application, 05-mc-140 (CCC), Docket No. 2, ¶ 3)(emphasis added).

Evidently, the name of the authorizing official was not included in the cited portion of the Application. However, it clearly indicates that the Memorandum of Authorization was attached to the Application. Contrary to Defendant's assertion, said memorandum was, in fact, signed by Laura H. Parsky, a specially designated official, not by John C. Richter. Even though the Government erred in submitting a Memorandum in which Mr. Richter's name appears in the "From" portion of the heading segment, it was, in actuality, signed by Laura H. Parsky.

Failure to correctly identify the person authorizing the application, when in fact it was authorized by a specially designated official, does not represent a "failure to follow Title III's precautions against unwarranted use of wiretapping or electronic surveillance and does not warrant the suppression of evidence gathered pursuant to a court order resting upon the

application." United States v. Chavez, 416 US 562, 571 (1974). Therefore, this Court concurs with the Magistrate Judge in finding that the authorizing judge relied on the memorandum to determine that the Application was properly authorized. Furthermore, the Order authorizing the wiretap correctly indicates that the application was authorized by Laura H. Parsky. (Application, 05-mc-140 (CCC), Docket No. 4, p. 4).

Defendant's second argument regarding the Application is that the Attorney General's Order of Special Designation cited in the text of the Application was expired at the time said application was made. Defendant is correct regarding that fact. The Attorney General's Order 2407-2001 was issued on March 8, 2001 and was later replaced by Order No. 2758-2005, which was issued on February 24, 2005. In other words, the Government incorrectly cited the source of the U.S. Department of Justice official's authorizing power. However, this mistake does not entail suppression because the correct Order was attached to the Application. The Court once more concurs with the Magistrate Judge in finding that the authorizing judge examined and relied upon the attached order, not upon the erroneously cited order.

### B. The sealing of the recordings

Defendant avers that the recordings were not properly sealed. Specifically, he posits that they were not sealed pursuant to an order, that they were sealed by a judge other than the

Criminal Case No. 06-009 (JAG)                                          8

authorizing judge and that they were not timely sealed, all in violation of Title III. The pertinent Title III section requires that "[i]mmediately upon the expiration of the period of the order, or extension thereof, such recordings shall be made available to the judge issuing such order and sealed under his direction". 18 U.S.C. § 2518(8)(a).

## 1. Absence of a sealing order

In his Objection to the Report and Recommendation, Defendant contends that since a review of the miscellaneous case docket does not disclose an order sealing the recordings, it must be concluded that they were not sealed. (ORR, Docket No. 355, p. 3). In his Post-Hearing Brief Defendant reiterates that, without a written order, it must be considered that the recordings have never been sealed. (Defendant's Post-hearing Brief, Docket No. 406, p. 17).

An inspection of 05-mc-140 (CCC)'s file reveals that a written order was not issued. However, during the hearing held on the matter, Agent Iglesias testified that he witnessed as an Assistant United States Attorney handed the recordings to former Chief Judge Lafitte and was present when said judge initialed and wrote the date on a sticker placed on the case that contains the recordings. (Transcript of Hearing on Motion, Docket No. 399, pp. 11, 52). The undersigned also examined the recordings during the hearing and was able to verify that the case

containing the recordings is closed with a sticker that has former Chief Judge Lafitte's initials and a date on it. The sticker is intact and it appears that the recordings may not be opened without breaking it.

The Court finds that Agent Iglesias's testimony and the undersigned's inspection of the recordings are sufficient to establish that a sealing took place. Contrary to what Defendant posits, the actions carried out, not in Former Chief Judge Lafitte's presence nor under his instructions, but by him personally, constitute a sealing within the meaning of 18 U.S.C. § 2518. It would be absurd to find that even when Judge Lafitte himself performed several actions with the purpose of ensuring that the recordings were not opened without destroying his initials, a sealing order would also be required. Former Chief Judge Lafitte could not have ordered himself to seal the recordings once he had already done so. Therefore, it would be unnecessary to require that he issue an order on the matter. Furthermore, regardless of whether a written order was issued or not, the ultimate question in this particular case is if the recordings were physically sealed. The Court is satisfied that they were.

**2. Recordings were not sealed by the authorizing judge**

Defendant's second argument is that the recordings must be suppressed because they were not sealed by the judge who issued

the order authorizing the wiretaps, which is a violation of Title III. Said statute requires that, "[…] the recordings be made available to the judge issuing such order and sealed under his direction". 18 U.S.C. § 2518(8)(a). According to Defendant, Judge Consuelo Cerezo, not former Chief Judge Lafitte, should have sealed the recordings because she issued the order authorizing the wiretaps.

During the hearing, Agent Iglesias testified that the day the recordings were brought to Judge Consuelo Cerezo she was not available and were instead received by former Chief Judge Lafitte who proceeded to perform the sealing. (Transcript of Hearing of Motion, Docket No. 406,p. 13). Defendant argues that there is no evidence to suggest that the Government asked where Judge Consuelo Cerezo was, why she might be unavailable or when she would be available again that might justify a deviation from Title III. (Defendant's Post-hearing Brief, Docket No. 406, p. 16).

The Court agrees with the Magistrate Judge in finding that the fact that the recordings were not sealed by Judge Consuelo Cerezo does not warrant suppression. Title III's requirement that the sealing be directed by the same judge who issued the wiretap order responds to the idea of having, for purposes of judicial economy and close monitoring of all Title III prcedures, the same judge deal with all aspects of a wiretap

authorization and sealing. The unavailability of a Judge, for whatever reason, to direct or perform the sealing of the evidence does not signify that a sealing directed or performed by another judge is automatically null.

In this case, the fact that the Government did not ask the specific details regarding Judge Consuelo Cerezo's absence, or that it did not press to see her or explain the importance of the matter, does not affect the validity of Former Chief Judge Lafitte's sealing. Also, the fact that a Judge Consuelo Cerezo's Judicial Assitant did not provide information regarding her whereabouts cannot mean that the recordings must be discarded automatically. Other Courts have also sanctioned the practice of taking a sealing matter to another judge when the issuing judge is unavailable. See United States v. Lopez, 2000 U.S. Dist. Lexis 8060, n. 15; United States v. Poeta, 455 F.2d 117 (2d Cir. 1972).

The only issue remaining in relation to the sealing is whether it was performed in a timely fashion.

**3. Timeliness of the seal**

As cited above, Title III requires that, "[i]mmediately upon the expiration of the period of the order, or extension thereof, such recordings shall be made available to the judge issuing such order and sealed under his direction". 18 U.S.C. § 2518. It also requires that "[t]he presence of the seal provided for by

this subsection, or a satisfactory explanation for the absence thereof, shall be prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517." Id.

Defendant argues in his Motion to Suppress that too many days elapsed between the moment in which the wiretap was terminated and the sealing of the recordings. He avers that the recording must be suppressed given that they were not immediately sealed as mandated by Title III and that a satisfactory explanation for the delay has not been offered by the Government. In order to determine if the recordings were timely sealed, the chain of events relating to the wiretap's authorization, activation and deactivation must be recounted first.

On September 6, 2005, the Order authorizing the wiretap for a period of 30 days was issued. (05-mc-140 (CCC), Docket No. 4). According to the Government's First Ten Day Report, the recordings started on September 9, 2005. Id. at Docket No. 9. It continued until September 28, 2005, when the target cellular phone was deactivated. The wiretap was left in place until September 30, 2005, in case the phone was reactivated. On said date the wiretap was deactivated and the disk containing the recordings was removed from the recording equipment. On October 7, 2005, Agent Iglesias and an Assistant United States District

Attorney brought the recordings to the Court to be sealed and, as determined above, were in fact sealed by former Chief Judge Lafitte.

Agent Iglesias testified during the hearing that the recordings remained under lock and key between September 30, 2005, the date the wiretap was terminated, and October 7, 2005, when the assistant United Stated Attorney and himself brought them to the Court to be sealed. According to his testimony, his supervisor, Mr. Marvin Gardner, had locked the recordings in his office where no one could access them during his absence. He returned to his office on October 6, 2005. (Transcript of Hearing on Motion, Docket No. 399, pp. 11, 48).

**a.**

The First Circuit's seminal case on the subject of seal timeliness, United States v. Mora, 821 F.2d 860 (1st Cir. 1987), establishes that unsealed or late-sealed evidence must pass the so-called "satisfactory explanation" test built into 18 U.S.C. § 2518(8)(a). A few years after Mora, the Supreme Court reached the same conclusion in United States v. Ojeda Rios, 495 U.S. 257, 264 (1990) ("Like every Court of Appeals that has considered the question, we conclude that § 2518(8)(a) applies to a delay in sealing, as well as to a complete failure to seal, tapes.")

Criminal Case No. 06-009 (JAG)                                    14

In <u>Mora</u>, however, the First Circuit circumvented the "problematic question of determining whether a delay ought to be calculated from the expiration of the warrant or from such earlier date as the objective of the tap is achieved," because the delay in question was to be considered significant either way. Having found that the recordings were not immediately sealed, the Court proceeded to analyze if the Government's explanation was satisfactory. Contrary to the facts in <u>Mora</u>, in the case at bar, it must be determined, as a threshold issue, whether the recordings were sealed immediately or not. If the Court determines they were not sealed immediately, an analysis of the Government's proffered explanation must be conducted.

The Seventh Circuit Court of Appeals has understood that the sealing must take place as soon as the wiretap authority ends, which is either on the date specified in the wiretap order or when the surveillance has achieved its objectives, whichever is first. <u>United States v. Macklin</u>, 41 Fed. Appx. 866 (7th Cir. 2002). Several Circuits have determined that a two to three day delay is to be considered "immediate" within the meaning of 18 U.S.C. § 1825(8)(a). <u>United States v. Matthews</u>, 431 F.3d 1296 (11th Cir. 2005) (citing <u>United States v. McGuire</u>, 307 f.3d 1192 (9th Cir. 2002)); <u>United States v. Wilkinson</u>, 53 F.3d 757 (6th Cir. 1995); <u>United States v. Wong</u>, 40 F.3d 1347 (2d Cir. 1994). The Tenth Circuit Court of Appeals considered that ten days is

too long to be considered "immediate." <u>United States v. Coney</u>, 407 F.3d 871, 873 (10th Cir. 2005).

In the case at bar, the wiretap was taken down on September 30, 2005, after the agents became convinced that the phone, which was deactivated two days earlier, would not be reactivated. The Court considers it was not unreasonable for the agents to believe there was a possibility that the phone would be reactivated. Hence, it finds that they had achieved their objectives regarding the specific telephone number in question by September 30, 2005, when it became apparent that the phone would not be reactivated. From said date until October 7, 2010, when the recordings were sealed, they were in the custody of the DEA agents. In other words, the Government brought the recording to the Court to be sealed after seven calendar days.

The Court finds that it would be unreasonable to regard the seven day delay as fitting the conventional understanding among the circuits of the term "immediate".[3] Therefore, a dissection of the reasons proffered by the Government of the delay must be performed under <u>Mora</u> in order to determine if they constitute a "satisfactory explanation."

---

[3] Even if only working days were to be taken into account the same conclusion would be reached. Given that September 30, 2005 was a Friday, the Government still delayed five working days in bringing the recordings to Court, which is outside the scope of what Courts have considered to be "immediate."

In Mora, the First Circuit explained that what is to be considered a satisfactory explanation must be interpreted in light of the purposes of Title III safeguards. It emphasized that "it will be important to determine whether the purpose which the particular procedure was designed to accomplish has been satisfied in spite of the error." Mora, 593 F.3d. at 866 (citations omitted). The Court further stated that several concrete factors must be scrutinized by a court when deciding what constitutes a satisfactory explanation.[4]

The first of the critical elements is whether the Government has established by clear and convincing evidence that the integrity of the recordings has not been compromised. Id. at 867. As stated by the Court of Appeals, "[i]nasmuch as the need for a 'satisfactory explanation' only arises when those in charge of the wiretap operation fail to do their homework and to present the tapes for immediate sealing, any doubts about the integrity of the evidence should be laid at law enforcement's doorstep." Id. at 868. The second factor that must be analyzed relates to the Government's burden of showing that the delay occurred in good faith. This entails the analysis of two

---

[4] Regarding the application of the factors enumerated in Mora the Court stated, "[a]lthough we have set out what we view as the most critical integers of the equation, we stress that there is no stock formula by which the adequacy of the explanation can invariably be gauged." This Court will conduct its analysis accordingly. Mora, 593 F.3d at 869.

elements: whether a cognizable prejudice was caused to the
Defendant and whether the Government benefited unfairly or
gained a tactical advantage from the lapse. Id.

The next important factor is the length of the delay. This
factor bears upon the others because the longer the delay, the
greater the possibility of adulteration and the harder it is to
prove good faith or absence of undue prejudice. Id. Finally, an
analysis of the cause of the delay must be performed. The cause
may be deemed unsatisfactory if it shows blatant disregard
towards the right of the accused or if it reflects an
"unwholesome prosecutorial zeal." Id. at 869. It may be deemed
satisfactory if the delay was inoffensive, arose of an honest
mistake or was beyond the control of law enforcement. Id.

Having established the critical factors set out in Mora, the
Court will proceed to perform the corresponding analysis.

### b.

As indicated above, the first factor gages the quality of the
proof offered by the Government to establish that the recordings
were not tampered with while in its custody. Agent Iglesias's
testimony established the chain of custody of the evidence from
the moment they took the recordings from the machine connected
to the wiretap until the moment they were placed in former Chief
Judge Lafitte's hands. He also testified that during the period
between those two events the recordings remained under lock and

key and that his supervisor, who was absent until the day before the recordings were sealed, was the only person who had a key to where they were being kept.

The Court has scrutinized the record searching for allegations of tampering made by the Defendant. None have been found. Even though the Government bears the burden of proof regarding this matter, it cannot be expected to prove a negative when tampering has not even been alleged. Given the absence of said allegations, and given that the Government has established through Agent Iglesias credible testimony that the recordings were kept in a manner that sufficiently excludes the possibility of tampering, the Court finds that the first criteria set out in <u>Mora</u> is met in this case.[5]

The second factor entails the determination of whether the defendant suffered a cognizable prejudice and whether the Government gained a tactical advantage. It is a given under the analysis set out in <u>Mora</u>, that the mere fact that the recordings were not immediately sealed is prejudicial to any defendant. However, further cognizable prejudice must at least be argued. In this case, aside from the assertion that the law was not

---

[5] Evidently, the ideal scenario in this case would have been for the recordings to have gone straight from the machine connected to the wiretap to the Court to be sealed. However, not even this would completely and absolutely exclude the possibility of tampering. Title III and the Court's enforcement of its provisions simply seek to minimize this ever present possibility.

strictly complied with, Defendant has not alleged what if any prejudice was suffered by the delay. Furthermore, the Court finds that the delay did not afford the Government any tactical advantage.

The third factor has to do with the length of the delay. As indicated above, the Government tarried seven calendar days to bring the recording to the Court. Even though the Court understands that this delay is too long to be deemed within the common meaning of the word "immediate," it does not believe that the delay was considerably long either. The delay is just barely above what could be regarded in this context as "immediate." Therefore, the Court finds that the delay did not increase the possibility of adulteration, which has not been alleged, and that it does not demonstrate bad faith on the Government's part.

Finally, the Court must look at the Government's proffered explanation for the cause of the delay. As indicated by Agent Iglesias during the hearing, the recordings were locked in his supervisor's office between Friday, September 30, 2005, the day they were removed from the recording equipment, and Thursday, October 6, 2005, the day before they were sealed. According to the testimony, his supervisor was not in the office and, therefore, no one could access the recordings, including himself, and instead had to wait until the supervisor's return. In other words, the agent's explanation was that the recordings

were not immediately sealed because they could not be taken out from where they were in order to be brought to Court.

Evidently, Agent Iglesias, his supervisor, and the District Attorney's office were collectively negligent in not foreseeing that an absence on the part of the supervisor, even if unpredictable and justified, would inevitably delay the sealing. However, given the totality of the circumstances, this carelessness does not rise to the level of blatant disregard of Defendant's rights. Much less does it indicate unwholesome prosecutorial zeal. In any case, this absence of forethought shows there was no such zeal. Furthermore, the Court considers that even when the Government's actions are distressful, they responded to an honest mistake. The fact that a series of events that could have been easily foreseen by the Government ended up causing a delay in the sealing does not mean that it was not an honest mistake or that it responded to a calculated scheme to act in violation of Title III.

Given the above, the Court finds that an analysis of the factors set out in Mora and of the totality of the circumstances in this case support the conclusion that the delay was satisfactorily explained by the Government.

### C. The necessity requirement

Defendant posits that the Government misleadingly omitted from the Affidavit in Support of the Application ("Affidavit") certain key information regarding one of the wiretap target's past and current status as an informant. (Affidavit, 05-mc-140 (CCC), Docket No. 3). Specifically, Defendant alleges that Corales Casiano was a multi-agency informant at the time the Application was made and, therefore, the omission of this fact infringed what is known as the Title III's "necessity requirement." The Government denies having withheld anything and considers that there was no information that required disclosure in the first place.

The Affidavit, which was prepared by DEA Agent Ernst S. Jacobsen, III, indicates that Corales Casiano "provides logistical support" to Defendant's alleged criminal organization; "distributes kilogram quantities of cocaine within the organization"; "is a former PRPD [Puerto Rico Police Department] police officer"; and was fired due to corruption allegations. Id. at ¶ 15(b). It also recounts Corales Casiano's lengthy history of state drug and weapons related arrests and convictions. Id.

During the hearing, Agent Iglesias was questioned extensively by both the Government and Defendant's counsel regarding his personal knowledge and the DEA's knowledge of Corales Casiano. When asked by the Government about Corales Casiano, Agent

Iglesias testified that at the time the application was made he was a suspect of drug trafficking with Defendant's alleged drug organization and that he is currently a witness in the case at bar. (Transcript of Hearing on Motion, Docket No. 399, p. 16). He also testified that at the time the Affidavit was made, he knew Corales Casiano was a participating witness in a murder investigation that was being carried out by the Negociado de Investigaciones Especiales of the Puerto Rico Police ("NIE"). Id. He indicated that at that time he did not know whether Corales Casiano was listed as a NIE informant or not. Id. He further indicated that even if he was an informant with the NIE, it would not have mattered to the DEA because he was still a suspect in the drug investigation they were conducting. Id. at 17.

During the cross examination, Agent Iglesias testified that he knew who Corales Casiano was since 1997 because, while working at the PRPD, he was the scene investigating agent of a murder in which Corales Casiano was a suspect. Id. at 20-23. He also testified that at one point he was told by a NIE agent that Corales Casiano had become a cooperating witness in said murder case, where he was also a witness. Id. at 23-24.

Exhibit A, which was offered by Defendant as evidence, is Corales Casiano's NIE informant form. It indicates that it was filled out by a NIE agent on September 1, 1999. According to

what the agent wrote on the form, Corales Casiano said during their interview that he was a DEA and PRPD informant from "August 1998 to present." Agent Iglesias testified that he had not seen said document before. Id. at 28. When asked whether he had the ability to check if a person is an informant, Agent Iglesias explained that there is no single informant database and that to find out whether a person is an informant an agent would have to specifically inquire with each agency, which he did not do in this case. Id. at 31.

Agent Iglesias further testified that at the beginning of the investigation Corales Casiano's name came up during a conversation he had with his supervisor, Agent Ivan Lugo. Id. at 33. During that conversation, Agent Lugo commented that Corales Casiano had wanted to cooperate with the DEA at one point in the past, but that the Assistant United States Attorney had not authorized it. (Transcript of Hearing on Motion, Docket No. 399, p. 32). When asked whether the DEA considered at the beginning of the investigation if they could use Corales Casiano as an informant, Agent Iglesias said that they did not because Agent Lugo had already stated that it was not viable. Id. at 35.

Defendant avers that the Affidavit should have included Corales Casiano's history as an informant and that omitting that information is contrary to Title III. Said statute requires that a wiretap application include "[a] full and complete statement

Criminal Case No. 06-009 (JAG)                                    24

as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 USC § 2518(1)(c). The First Circuit has recently reiterated that in order to satisfy this requirement, the Government must demonstrate "a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls." United States v. Julio Cartajena, 593 F.3d 104, 109 (1st Cir. 2010) (citing United States v. Amado Lopez, 300 F.3d 46, 53 (1st Cir. 2002)).

To comply with this requirement, "the Government is not required to show that other investigative methods have been wholly unsuccessful […] nor must the government exhaust all other investigative measures before resorting to wiretapping." Cartajena, 593 F.3d at 109 (citations omitted). There is no single test to determine the amount of time and effort the investigators must invest in trying to use other methods before resorting to a wiretap. Id. (citing United States v. Nelson Rodriguez, 319 F.3d 12, 33 (1st Cir. 2003)). Furthermore, the "full and complete statement requirement does not mandate that officers include every single detail of an investigation, even if relevant to the need for a wiretap." Cartajena, 593 F.3d at 110 (citing United States v. Yeje-Cabrera, 430 F.3d 1, 9-10 (1st Cir. 2005)).

When reviewing a judge's determination to issue a wiretap order, a trial Court's role is not to perform a *de novo* review but to determine if the contents of the application were minimally adequate to support it. Cartajena, 593 F.3d at 109 (citing United States v. Ashley, 876 F.2d 1069, 1074 (1st Cir. 1989)). Furthermore, a Court must "exercise (or otherwise appropriately adjust) all misleading statements from the affidavit" and determine if "there is still a more than adequate showing of 'probable cause'" and if the "misstatements are immaterial." Cartajena, 593 F.3d at 111 (citing Nelson-Rodriguez, 319 F.3d at 34).

Having performed a careful examination of the Affidavit, the Court finds that the issuing judge had more than a minimally adequate basis to support the determination that was made and that the amount of information contained therein renders the alleged omissions regarding Corales Casiano immaterial. The thirty-seven page affidavit lists the traditional investigative methods that were employed throughout the lengthy investigation process. It provides sufficient information on all the methods that had been used and on those that had been rejected because the agents considered them to be either unlikely to succeed or too dangerous to meet the necessity requirement. To wit, it explains: specific failed efforts to introduce undercover agents (Affidavit, Docket No. 3, ¶ 67); the decision not to use

interviews or cooperation from members of the conspiracy for fear of threats or harm to those individuals and for fear they would alert Defendant[6] (Id. ¶ 68); the belief that granting immunity to any of the subjects would jeopardize the investigation and prosecution of the most culpable individuals (Id. ¶ 70); the fact that pen register and toll records had been useful but could not provide information regarding the identity of those who are communicating or regarding the purpose of the contact (Id. at ¶ 71); the fact that physical surveillance has been ineffective because the locations of the wiretap target's residences were difficult to survey, they did not distribute cocaine from them and mere physical observation does not reveal the content of their communications (Id. at ¶ 73); two unsuccessful attempts at setting up buy busts because Defendant suspected the DEA was involved (Id. ¶ 74); and, that the telephone conversation recorded by CI #3 were not enough to successfully prosecute Defendant.

The Court considers that even if Judge Consuelo Cerezo had knowledge of the omitted facts regarding Corales Casiano, she would have nonetheless issued the wiretap order. A detailed, adjusted and careful analysis of the Affidavit renders the

---

[6] The affidavit details in another section how CI #3 had expressed to Agent Iglesias and another agent that Defendant threatened her life by stating that if he found out that she was cooperating he would make her "disappear." (Affidavit, 05-mc-140, Docket No. 3, ¶ 49)

omitted facts immaterial in light of the amount of information in support of the issuance of the order contained therein. Furthermore, it explains that the use of new informants had specifically been discarded for fear of further threats, retaliation or harm to them. Id. ¶ 68. Given this, the Court considers that having knowledge of a past failed attempt by Corales Casiano to cooperate with the DEA or that he had been a witness for NIE in a murder case would not have had a material impact on Judge Consuelo Cerezo's decision to authorize a wiretap. The Court will not, however, consider that Defendant's Exhibit A is evidence that Corales Casiano was a DEA and NIE informant at the time the Application in this case was made. The information contained in said document was provided by Corales Casiano himself and his assertion that he was a DEA informant is specifically contradicted by Agent Iglesias credible testimony during the hearing.

### D. Omission of information regarding CI #3's relationship with Defendant

Defendant alleges that the Affidavit is materially misleading regarding CI #3's background, motivations for providing information to the DEA and relationship with Defendant. Specifically, he posits that the following facts were omitted: that CI #3's husband had been convicted for drug trafficking crimes and was released one week before she started providing

information to the DEA; that CI #3 was cooperating, at least partially, to avoid prosecution in another case; that CI #3 was sentimentally involved with Defendant; and, that CI #3 was the complaining witness in Defendant's April 10, 2004 domestic violence arrest. (Docket No. 287, pp. 19-21).

After having appropriately adjusted all misleading and omitted statements regarding CI #3 from the affidavit, the Court is convinced that "there is still a more than adequate showing of 'probable cause.'" Cartajena, 593 F.3d at 111 (citing Nelson-Rodriguez, 319 F.3d at 34). Specifically, the affidavit contains plenty of facts related and unrelated to CI #3 that properly support the issuance of the wiretap order and, therefore, the omitted information is considered immaterial.

The Affidavit is detailed regarding information directly gathered by the DEA and of suspicious activities personally observed by its agents. As was discussed above, it also describes all the investigative methods that were employed and the type of information that each yielded, which properly support a finding of necessity. It is particularly significant that two confidential informants besides CI #3 were included in the Affidavit. According to said document, CI #1, a long-term DEA informant, had introduced via telephone a DEA agent and one of the wiretap targets. (Affidavit, 05-mc-140 (CCC), Docket No. 3, ¶ 17). It then describes recorded negotiations regarding

several drug deals between the DEA agent and said target. Id. ¶¶ 18-24. The Affidavit also includes information provided by CI #2 pertaining to another wiretap target's role in Defendant's alleged criminal enterprise. Id. ¶¶ 25-28.

The decision not to suppress the recordings because of these omissions, however, must not be interpreted by the Government as a green light to systematically exclude from wiretap applications information concerning sentimental relationships between informants and wiretap targets. Omissions such as the ones in this case may constitute material violations of Title III's necessity requirement under a different set of circumstances, as in the case of <u>United States v. Simpson</u>, 813 F.2d 1462 (9th Cir. 1987). However, contrary to what Defendant asserts, this case is far from "remarkably similar" to <u>Simpson</u>. In said case, the FBI recruited a known prostitute, heroin addict and Canadian fugitive to infiltrate a criminal organization. It then failed to disclose in the affidavit that she had become sentimentally involved with the defendant, that she had arranged for him to sell heroin on two occasions and that she had introduced him to a DEA agent. The Ninth Circuit Court of Appeals concluded that the affidavit was artfully crafted to mislead the issuing judge by portraying the informant as an innocent eavesdropper and create the illusion of necessity

when, in fact, she was deeply involved in the defendant's criminal affairs. <u>Simpson</u>, 813 F.2d at 1472.

In the case at bar, however, the Affidavit does not portray CI #3 as an innocent eavesdropper, but as a person within Defendant's trusted circle and in whom Defendant allegedly confided details of his activities. For example, the Affidavit indicates that Defendant purportedly explained to CI #3 the logistics of the importation of cocaine in fast boats from the Dominican Republic (Affidavit, 05-mc-140 (CCC), Docket No. 3, ¶ 32) and the purchase and resale prices of the kilograms of cocaine (Id. at ¶ 33). It also explains that CI #3 had accompanied Defendant to meet with another alleged member of the organization (Id. at ¶ 34) and that she had introduced Defendant to a DEA agent who then proceeded to negotiate with Defendant (Id. at ¶ 38). The affidavit indicates that Defendant purportedly took CI #3 to a harbor where marine law enforcement kept a boat that his alleged organization had used to import cocaine from the Dominican Republic and later abandoned at sea (Id. at ¶ 48). Finally, it explained how CI #3's life had been supposedly threatened by Defendant at her sister's residence. Id. at ¶ 50.

As can be surmised from these and other events recounted in the Affidavit, CI #3 was deeply involved in Defendant's affairs. The fact their sentimental relationship was not revealed, does

not signify that she was portrayed as an innocent bystander with the purpose of creating the illusion of necessity.

### CONCLUSION

For the reasons stated above, and after performing a *de novo* review, the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation (Docket No. 318) and accordingly **DENIES** Defendant's Motion to Suppress Evidence Obtained from Title III Wiretap. (Docket No. 287).


IT IS SO ORDERED.

In San Juan, Puerto Rico this 20th day of December, 2010.


                                        s/ Jay A. García Gregory
                                         JAY A. GARCIA GREGORY
                                          U.S. DISTRICT JUDGE