IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

United States of America,

**Plaintiff**

v.

Edison Burgos Montes [1],

**Defendant**

**CRIMINAL NO.** 06-009 (JAG)

## OPINION AND ORDER

Before the Court are four motions to suppress filed by Edison Burgos Montes (Docket Nos. 283, 284, 286, 331) and a Magistrate Judge's Report and Recommendation (Docket No. 423). For the reasons stated below, the Court hereby **ADOPTS** in part and **REJECTS** in part the Magistrate Judge's Report and Recommendation and, accordingly, **DENIES** the Motion to Suppress Physical Evidence- Search of Black Chrysler Sedan Bearing Puerto Rico License Plate GIG-001 (Docket No. 284) and the Motion to Suppress Physical Evidence- Search of Farm (Docket No. 331), and **GRANTS** the Motion to Suppress Physical Evidence- Residence Search(es) (Docket No. 283) and the Motion to Suppress Physical Evidence- Firearm and Ammunition (Docket No. 286).

## PROCEDURAL BACKGROUND

On January 12, 2006, an Indictment was returned against Edison Burgos Montes ("Defendant") and co-defendant Radamés Castillo Martínez ("Castillo Matínez"), who is presently absconded, for a conspiracy related to narcotic trafficking offenses in violation of Title 21 U.S.C. §§ 841(a)(1) and 846 (Count One); importing into the customs territory of the United States controlled substances, in violation of Title 21 U.S.C. §§ 952(a) and 963 (Count Two); and forfeiture allegations as a result of the violations in above counts (Count Three).

On May 18, 2006, a Superseding Indictment was returned wherein Defendant was in addition charged with having killed with malice aforethought, knowingly, intentionally, unlawfully and with premeditation Ms. Madelin Semidey Morales ("Semidey Morales") to prevent her from testifying in an official proceeding, to prevent her from further communicating to law enforcement information pertaining to the commission or possible commission of crimes related to the importation and conspiracy to possess with intent to distribute cocaine (Count Three) and to retaliate against her for doing so (Count Four), a violation of 18 U.S.C. §§ 1512 and 1513.[1] (Docket No. 64). Defendant is currently facing the death penalty.

---

[1] The forfeiture allegations became Count Five of the Superseding Indictment.

In its case against Defendant, the Government seeks to introduce several pieces of evidence it obtained as a result of warrantless searches performed by Semidey Morales and as a result of searches executed pursuant to search warrants. Defendant filed:

1. Motion to Suppress Physical Evidence- Residence Search(es) (Docket No. 283).

2. Motion to Suppress Physical Evidence- Search of Black Chrysler Sedan Bearing Puerto Rico License Plate GIG-001 (Docket No. 284).

3. Motion to Suppress Physical Evidence- Firearm and Ammunition (Docket No. 286).

4. Motion to Suppress Physical Evidence- Search of Farm (Docket No. 331).

After the Government filed its oppositions to the motions, they were referred to a Magistrate Judge for a Report and Recommendation. (Docket Nos. 311, 335). Evidentiary hearings were held before the Magistrate Judge on February 23 and 24, 2010, to jointly entertain these motions.[2] At the end of the hearing, the parties requested and were granted leave to file simultaneous legal briefs. (Docket Nos. 366, 367).

---

[2] All references to transcripts and exhibits will be to those pertaining to these evidentiary hearings.

Criminal Case No. 06-009 (JAG)                                    4

On February 28, 2011, the Magistrate Judge issued a Report and Recommendation. (Docket No. 423). She advises the Court to deny the motions, except for the Motion to Suppress Physical Evidence- Firearm and Ammunition (Docket No. 286).

On March 14, 2011, within the prescribed period to file objections to the Report and Recommendation, Defendant requested additional time. (Docket No. 424). Said request was granted. (Docket No. 425). On April 6, 2011, Defendant filed his objections to the Report and Recommendation. (Docket No. 426). The Government did not file objections and failed to respond to Defendant's objections.

Defendant "specifically objects to the entirety of the Magistrate's proposed findings and recommendations" as to the three motions that the Magistrate Judge advises the Court to deny. Id. at 2. Evidently, he does not object to the Magistrate Judge's findings and recommendations in relation to the Motion to Suppress Physical Evidence- Firearm and Ammunition (Docket No. 286).

The Court will first address the two motions pertaining to the evidence seized pursuant to search warrants and will then turn to the motions that relate to the alleged illegal seizure by Semidey Morales of documents belonging to Defendant.

## DISCUSSION

## I.   SEARCHES PURSUANT TO WARRANTS

Defendant Burgos-Montes has requested suppression of physical evidence obtained pursuant to a warrant for the search of a black Chrysler Sedan with license plate GIG-001 (Docket No. 284) and pursuant to a warrant for the search of his farm in Yauco, Puerto Rico (Docket No. 331). The Magistrate Judge recommended that the Court deny both motions.

The search warrants for the farm and the black Chrysler sedan are registered under Case No. 05-600M and Case No. 05-601M, respectively, and were authorized by Magistrate Judge Camille L. Vélez Rivé on December 29, 2005. The applications for the search warrants contained an affidavit in support (identical in both applications) which was prepared and sworn by Task Force Agent for the Drug Enforcement Administration Víctor Iglesias ("TFA Iglesias"). The affidavit contained information of the investigations conducted by TFA Iglesias and other law enforcement officers, as well as information provided by Semidey Morales and CS#2, subsequently identified as Neftalí Corales Casiano, who allegedly knows Defendant and conducted drug business with him. (Exhibit 6, Affidavit). The warrants authorized the search of the vehicle and the farm in order to obtain "[e]vidence or trace evidence relevant to the homicide of

Criminal Case No. 06-009 (JAG)                                    6

Madelin Semidey-Morales," who had disappeared six months earlier, around July 4, 2005. (Exhibit 6, Search Warrant; Exhibit 7, Search Warrant).

The search warrant for the vehicle was executed on January 5, 2006 and returned to Judge Aida Delgado Colón on January 12, 2006. Several articles of evidence were recovered from the vehicle, including hairs and dry blood. (Exhibit 6, Search Warrant Evidence Recovery Log). The search warrant for the farm was executed on December 30 and 31, 2005 and returned to Judge Aida Delgado Colón on January 12, 2006. It did not yield results. (Exhibit 7, Return form).

Defendant specifically avers that the evidence obtained pursuant to the warrants should be suppressed because: the warrants omitted mandatory information required by Fed.R.Crim.Proc. 41(e)(2)(A); they lack the particularity required by the Fourth Amendment; there is a lack of probable cause that evidence would be found in the farm and the vehicle; they were based on stale information that did not support a finding that the evidence would remain in the vehicle and the farm; and, there were material omissions concerning the information provided in the affidavit in support of the warrants as to Semidey Morales and Corales Casiano.

Criminal Case No. 06-009 (JAG)                                    7

### A. Failure to comply with Fed.R.Crim.Proc. 41(e)(2)(A)

Fed.R.Crim.Proc. 41 regulates the procedure to be followed by a federal law enforcement officer or an attorney for the Government to obtain a warrant to search for and seize a person or property or to install and use a tracking device. At the time the warrant was authorized the rule provided that:

> Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:
> (i) execute the warrant within a specified time no longer than 10 days;
> (ii) execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and
> (iii) return the warrant to the magistrate judge designated in the warrant. Fed.R.Crim.Proc. 41(e)(2)(A).[3]

The Magistrate Judge found that the fact that the search warrants did not specify the amount of time within which the warrants had to be executed and that they did not indicate it had to be returned to a specific judge or magistrate judge is inconsequential. Defendant objects to this finding and contends that the warrants are facially defective. The Court agrees with the Magistrate Judge.

---

[3] It must be noted that the rule in question was amended in 2009 to extend the period within which a warrant must be executed from ten to fourteen days.

While it is true that the Search warrants are blank after they indicate "[y]ou are hereby commanded to search on or before," after the blank they indicate that the date to be placed must "not exceed 10 days." (Exhibit No. 6, Search Warrant). Therefore, the agents were aware that they had to execute the warrants within ten days of their issuance. In this case, the warrants were executed on December 30 and 31, 2005 (search of farm) and January 5, 2006 (search of vehicle), well within the period of ten days indicated in the warrants as the limit and within the maximum imposed by Fed.R.Crim.Proc. 41 at the time. They were both returned to Judge Aida Delgado on January 12, 2006.

The fact that the warrants do not specify a date and a judge to which the warrants had to be returned does not materially affects their validity, especially since it is undisputed that they were executed according to Fed.R.Crim.Proc. 41(e)(2)(A). Both warrants undeniably fail to conform to the form prescribed by the rule in question, but these defects of form do not render the warrants substantially defective.

**B. Particularity**

Defendant argues that the warrants in question fail to meet the particularity requirement imposed by the Fourth Amendment. He contends that the fact that the warrants only indicate that

Criminal Case No. 06-009 (JAG)                                              9

they authorized the search of the vehicle and the farm for
"[e]vidence or trace evidence relevant to the homicide of
Madelin Semidey-Morales" renders them facially invalid. The
Magistrate Judge determined that the warrants did not authorize
a general search of Defendant's properties but rather a search
of a particular vehicle and a particular farm. Furthermore, she
found that the warrants indicated, in both specific and generic
terms, what was to be seized in relation to a particular crime
and, thus, properly limited the executing agents' discretion.
(Docket No. 423, pp. 9, 26).

   The Fourth Amendment requires that before the Government
intrudes into a citizen's privacy interest it show that there is
probable cause and that the search will be limited. It
guarantees that "no Warrants shall issue, but upon probable
cause, supported by Oath or affirmation, and particularly
describing the place to be searched, and the persons or things
to be seized." U.S. Const. amend. IV. There are two
constitutional requirements present in the Warrant Clause that
must be met before a warrant is issued: (1) probable cause to
believe a crime was committed and, (2) that the particularly
enumerated evidence will be found at the place to be searched.
U.S. v. Woodbury, 511 F.3d 93 (1st Cir. 2007). This second
requirement is, in turn, composed of two factors: particularity

and nexus. Particularity refers to a description of items to be seized in order to prevent the indiscriminate delving into a person's belongings in search for any kind of evidence. Id.

The Court considers that the search warrant for the vehicle and the farm are sufficiently specific to comply with the particularity requirement. While it is true that by TFA Iglesias' own admission during the hearing, he chose not to be more specific regarding the items of evidence to be seized, this does not signify that the warrant is constitutionally deficient. That is, the fact that the type of evidence to be seized could have been more particularly described does not mean that the warrant is not sufficiently particularized for Fourth Amendment purposes.

In Montilla Records of Puerto Rico v Morales, 575 F.2d 324 (1st Cir. 1979), the First Circuit invalidated a search warrant for lack of particularity because the warrant failed to specify which records the agents were allowed to seize and, hence, how to distinguish them from those they were not allowed to seize. In said case, the agents were after illegal copies Motown records. However, the search warrant instructed the agents to seize "sound recordings including but not limited to records, cartridges and Casettes which have been manufactured from sound recordings protected by the Copyright Act without the permission

of the sound recordings copyright owner." Id. at 325. The First Circuit noted that the "purpose of the particularity requirement in search warrants is to 'make general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" Id. at 326 (citing Marron v. United States, 275 U.S. 192 (1972)). It also noted that "[d]espite this requirement, on occasion the description in a warrant has been accepted by court although little more than the general class or type of item to be seized was listed. These exceptions involved special contexts in which there was substantial evidence to support the belief that the class of contraband was on the premises and in practical terms the goods to be seized could not be precisely described." Id. The Court in Montilla thus found that the exception was inapplicable there because the agents could have easily stated in the warrant that the items to be seized had to be counterfeit Motown records.

On the other hand, in U.S. v. Atwell, 289 F. Supp. 2d 629 (W.D. Pa. 2003), Judge Sean J. McLaughlin of the District Court for the Western District of Pennsylvania validated a search warrant similar to those in the case at bar. In Atwell, the warrant stated that the officers had authority to seize "any and

all physical evidence including but not limited to: suspected blood stains and other trace evidence that may aid in determining the disappearance and whereabouts of Josephs T. Donato." Id. at 632. The Court determined that the warrant did not give the agents *carte blanche* to search the suspect's home and that it clearly stated that the search had to be conducted within the context of a homicide investigation. Id. at 366.

In this case, the warrants specified that a search for evidence and trace evidence relevant to the homicide of Semidey Morales was being authorized. The warrants clearly indicated that the evidence to be sought had to be in relation to the suspected violent death of Semidey Morales. It would not have been practical for TFA Iglesias to precisely describe the items that could have been found due to the fact that the nature of the items to be seized could not be determined with surgical precision at the time the warrant application was made, even if some of them could have been named. That is, it would not have been practical for the agent to name and describe the types of evidence that could be classified as "trace evidence" for it would have certainly resulted in a lengthy list of technical terms and methods.

TFA Iglesias acknowledged that he chose not to list the items because he understood that by doing so he would be limiting what

could be seized in relation to the particular event in question, the homicide. (TR 2/24/2010, Docket No. 381, p. 17). Regardless of whether TFA Iglesias could have chosen to detail all the possible types of evidence that could have been seized, the warrant properly limited the agents' discretion. Contrary to what Defendant argues, the warrant did not allow an indiscriminate search of Defendant's car or farm for evidence of any crime. It authorized a search of a particular type of evidence: evidence related to the suspected homicide of Semidey Morales. Therefore, the Court is satisfied that the warrant was sufficiently particularized to meet the Fourth Amendment requirement.

**C. Probable Cause**

Defendant also argues that the Magistrate Judge misconstrued his arguments regarding the lack of probable cause because they are not solely based on the passing of time between the alleged disappearance of Semidey Morales and the execution of the warrants. According to Defendant, the affidavit failed to establish several factors necessary to show that there was a fair probability that the relevant evidence would be found in the vehicle and the farm at the time of the search.

As stated above, the Fourth Amendment requires that a warrant application establish: (1) probable cause to believe a crime was

committed and, (2) that the particularly enumerated evidence will be found at the place to be searched. Woodbury, *supra*. In U.S. v. Ribeiro, 397 F.3d 43, 48-49 (1st Cir. 2007), the First Circuit, citing Illinois v. Gates, 462 U.S. 213, 238 (1983), stated that, "[i]n determining whether the nexus element is satisfied, a magistrate has to make 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" In Gates, the Supreme Court noted that when reviewing a magistrate judge's determination to issue a warrant a court should not make a *de novo* review. Illinois v. Gates, 462 at 237. Instead, the warrant will be validated "so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the U.S. Const. amend. IV requires no more." Id. "Normally a reviewing court will defer to an issuing judge's probable cause determination in a doubtful or marginal case." U.S. v. McMullin, 568 F.3d 1, 6 (1st Cir. 2009) (citing United States v. Zayas, 95 F.3d 105, 111 (1st Cir. 1996)). Therefore, in reviewing if the warrant applications complied with the nexus requirement the Court must determine if the Magistrate Judge had substantial basis for finding that evidence was to be found in Defendant's vehicle and farm. In doing so, the Court will limit its scrutiny to the four corners

Criminal Case No. 06-009 (JAG)                                              15

of the affidavit submitted in support of the warrant
applications.

   The affidavit in question established that several days before
disappearing, Semidey Morales told TFA Iglesias and another
agent that Defendant had told her that if he ever found out she
was providing information to law enforcement he would kill her
and no one would find her corpse. (Exhibit 6, Affidavit, p. 3).
The affidavit also states that the same day Semidey Morales's
parents reported her missing, Defendant had the interior of the
vehicle in question washed while it rained. Id.

   During the evidentiary hearing, TFA Iglesias explained that
contrary to what the Affidavit states, Defendant did not
personally wash the car along with his employee, but instead
stood around and appeared to instruct his employee to wash the
interior of the vehicle. (TR 2/24/2010, Docket No. 381, p. 28).

   The Court finds that the Magistrate Judge had sufficient basis
to make a practical common-sense decision and find that there
was probable cause that evidence of Semidey Morales' homicide
was to be found in Defendant's vehicle. Even if the Affidavit
had correctly portrayed that it was only the employee washing
the inside of the car in the rain, the Magistrate Judge still
would have had a substantial basis to find probable cause to
issue the warrant because the Affidavit established that

Defendant had threatened Semidey Morales and that he had the interior of his car washed even in the rain shortly after her disappearance.

The Court also finds that the Magistrate Judge had sufficient basis to make a common-sense decision and find that there was probable cause that evidence of Semidey Morales's suspected homicide was to be found in Defendant's farm. The affidavit states that shortly after Semidey Morales's disappearance TFA Iglesias observed a portion of newly turned area of earth in the approximate dimensions of a grave in Defendant's property. (Exihibit 7, Affidavit, pp. 4-5). It was precisely in said property that Semidey Morales had told TFA Iglesias to go look for her if something ever happened to her. Id. at 5.

Contrary to what Defendant argues, it was not necessary for the affidavit to meticulously spell out what trace evidence is, how and why the evidence might be transferred to the vehicle, the likelihood that it would in fact be transferred, the relevance the evidence might have to the investigation or the likelihood that it would still be found in the car six months after the alleged disappearance. (Docket No. 426, p. 12). An affidavit in support of a search warrant only needs to proffer enough facts to allow a Magistrate Judge, as it did in this case, to make a reasonable inference of probable cause. It was

not, therefore, unreasonable for the Magistrate Judge to find that evidence of Semidey Morales' murder would still be found in the vehicle and the farm belonging to the homicide suspect six months after the disappearance. Defendant contends that the Magistrate Judge erred in applying her own "purported specialized knowledge of forensics to substitute for missing sworn evidence." Id. at 16. The Court disagrees.

The Supreme Court has stated that "[i]n dealing with probable cause, … as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Gates, 462 U.S. at 232 (citing Brinegar v. United States, 338 U.S. 160, 175 (1949)). It is precisely that type of common sense exercise that allowed the Magistrate Judge to make a finding of probable cause. The Court considers that a reasonable and prudent woman, such as the Magistrate Judge, would infer that evidence would remain in a vehicle or a farm six months after an alleged homicide took place and that this does not represent an impermissible attempt to supply for a lack of sworn evidence.

## D. Omitted Information regarding Semidey Morales and Corales Casiano

Defendant further contends that the Magistrate Judge erred in finding that his only argument regarding material omissions of

Criminal Case No. 06-009 (JAG)                              18

information relating to the confidential informants had to do with their motivations for cooperating. (Docket No. 426, p. 19). According to him, the affidavit failed to include other relevant information such as the nature of Semidey Morales's relationship with him, Corales Casiano's history of perjury and false statements and that Corales Casiano was a named interceptee in the Title III wiretap issues only months before.[4]

It is well established that when an affidavit in support of a warrant omits information or misleads, a Court must "exercise (or otherwise appropriately adjust) all misleading statements from the affidavit" and determine if "there is still a more than adequate showing of 'probable cause'" to render the misstatements immaterial. United States v. Cartagena, 593 F.3d 104, 111 (1st Cir. 2010) (citing U.S. v. Nelson-Rodriguez, 319 F.3d 12, 34 (1st Cir. 2003)). Furthermore, when reviewing a judge's determination to issue a warrant, a trial Court's role is not to perform a *de novo* review but to determine if the contents of the application supports it. Cartajena, 593 F.3d at 109 (citing United States v. Ashley, 876 F.2d 1069, 1074 (1st Cir. 1989)).

---

[4] This Court previously addressed a similar argument presented by Defendant in relation to information omitted from the Title III Application. (Opinion and Order, Docket No. 416).

After properly adjusting all the information omitted from the affidavit in relation to Semidey Morales and Corales Casiano, the Court finds that the Magistrate Judge would have still had an adequate showing of probable cause to issue the warrants. Even if the Magistrate Judge knew of the omitted information she would have still had a solid basis to issue the warrants given that that other information contained in the affidavit adequately established probable cause. The eleven page Affidavit in question contains information from sources unrelated to the informants that duly corroborate the information provided by them and it also contains information independently obtained by the DEA, such as observations made directly by the agents, telephone recordings and information obtained from the Puerto Rico Police Department.

For example, the Affidavit states that TFA Iglesias saw that Defendant had the interior of his vehicle washed in the rain two days after Semidey Morales's alleged disappearance and that he observed a portion of newly turned area of earth in the approximate dimensions of a grave in Defendant's property. (Exihibit 7, Affidavit, pp. 4-5). It was precisely in said property that Semidey Morales had told TFA Iglesias to go look for her if something ever happened to her. Id. at 5. The Affidavit also states that telephone records show a high volume

of calls between Defendant and Semidey Morales in the three days prior to her disappearance, but that the calls stopped the night before the disappearance allegedly took place. Id. at 4-5. Finally, the Affidavit makes reference to a recording of a conversation between Defendant and absconded co-defendant Castillo Martínez, in which Castillo Martínez states that he was worried something had happened to Defendant because of a woman. Id. at 6.

### E. Whether the search of the farm was the fruit of a poisonous tree and the good faith exception

Defendant argues that the search warrant for the farm is the fruit of a poisonous tree insofar as the law enforcement's knowledge of the existence of the farm stemmed from the illegal seizure of a contract subject to the Motion to Suppress Physical Evidence- Residence Search(es) (Docket No 283). The Magistrate Judge found that even if it were considered that the contract was illegally seized, the inevitable discovery doctrine would validate the search. (Docket No. 423, p. 31). The Court agrees.

Contrary to what Defendant argues in his Objections to the Report and Recommendation, the Government met its burden of proving by preponderance of the evidence that the existence of the farm would have been discovered by legal means unrelated to the documents seized by Semidey Morales. That is, it successfully demonstrated, as evidenced in the Affidavit and TFA

Iglesias's testimony during the hearings, that Madelin Semidey had shown the farm to TFA Iglesias during a drive they took with the intention of identifying Defendant's properties; that she told TFA Iglesias to look for her in the farm if something ever happened to her; that TFA Iglesias had learned that the local police seized stolen containers from the farm; and that Corales Casiano spoke to the agents about the farm. (TR 2/23/2010, Docket No. 418, pp. 132, 135). Therefore, the Court is satisfied that there were sufficient independent and legal means through which law enforcement could have learned about the existence of the farm and, thus, finds that the search warrant for the farm was not the fruit of a poisonous tree.

Finally, Defendant avers the good faith exception to the exclusionary rule provided by United States v. Leon, 468 U.S. 897 (1984), is inapplicable in this case. He argues that the Magistrate Judge was misled by the information and omissions in the Affidavit, it was so lacking in indicia of probable cause that it rendered the agents' belief in its existence entirely unreasonable and the warrants were so facially deficient that the executing officers could not have reasonably presumed them valid. However, given that the Court, as discussed above, finds that the warrants in question were valid, it considers it

unnecessary to decide whether the good-faith doctrine under <u>Leon</u> applies in the alternative.

## II.  Warrantless searches

Defendant seeks the suppression of a firearm and ammunition seized from Defendant's vehicle by Semidey Morales on January 2005, through his Motion to Suppress Physical Evidence- Firearm and Ammunition. (Docket No. 286). The Magistrate Judge recommends that the Court grant said motion. The Government did not file objections to this recommendation during the prescribed time period nor has it responded to Defendant's arguments in support of it contained in his Objections to the Report and Recommendation. Therefore, after performing a review of the Magistrate Judge's findings of law and fact, the Court finds it proper to adopt the Report and Recommendation regarding this particular motion.

Through his other motion, Motion to Suppress Physical Evidence- Residence Search(es), Defendant seeks the suppression of evidence obtained as the result of a warrantless search of his home and vehicle performed by Semidey Morales. (Docket No. 283). Specifically, Defendant seeks the suppression of the following items:

3.  DEA Non-drug Exhibit N-1, identified as bank and financial documents related to defendant Edison Burgos Montes.

4. DEA Non-drug Exhibit N-2, identified as a photograph of defendant Edison Burgos Montes.

5.  DEA Non-drug Exhibit N-3, identified as telephone numbers of various individuals provided by Confidential Source M.S.

6. DEA Non-drug Exhibit N-5, identified as a sales contract for a farm in Yauco, Puerto Rico.


During the hearing held before the Magistrate Judge it was established that on October 22, 2005, Semidey Morales executed a Confidential Source Agreement with the DEA. (Exhibit 1). The agreement was provided to her in the Spanish language. The English language version of the document, which was also submitted to the Magistrate Judge as part of Exhibit 1, states in its pertinent portion:

> 14.  I understand that I may not, under any circumstances, participate in an act of violence; participate in any act that constitutes obstruction of justice (e.g., perjury, witness tampering, witness intimidation, entrapment, or the fabrication, alteration, or destruction of evidence); participate in any activity designed to obtain information by an unlawful method (e.g., breaking and entering, illegal wiretapping, illegal opening of the mail, trespass amounting to illegal search, etc.); initiate or

instigate a plan or strategy to commit a federal,
state, or local offense. Id.

TFA Iglesias testified that Madelin Semidey read the
document and signed it without asking any questions. (TR
2/23/2010, Docket No. 418, p. 50). He also testified that he did
not explain any part of the document to her nor did he explain
what the consequences of an unlawful search and seizure would
be. Id. at 52. In essence, his testimony was that she did not
ask anything and he did not explain anything because he assumed
she understood the document fully. Id. at 53. In response to
questions posed by Defendant's counsel, TFA Iglesias testified
that he instructed Semidey Morales, who told him she would be
moving to Defendant's home, to specifically gather financial
information, information on properties and telephone numbers of
associates. Id.

On October 25, 2004, three days after executing the
Confidential Source Agreement, Semidey Morales provided the DEA
several documents she had taken from Defendant's house and car.
According to TFA Iglesias she was told she could not bring in
any more documents because they could be considered as the
product of an illegal acquirement. Id. at 23. The DEA, however,
marked the documents as evidence because, according to TFA
Iglesias, she had already brought them in. Id. Notwithstanding
the agent's instruction not to bring any more documents, on

Criminal Case No. 06-009 (JAG)                                          25

October 28, 2004, Semidey Morales provided the DEA with a copy
of the contract through which Defendant acquired the farm in
Yauco. Id. at 24. She told the agents that she had not taken the
document, but that Defendant had given it to her so that she
would make a photocopy of it for him. Id. at 25. TFA Iglesias
testified that she was again told not to bring any more
documents to them. Id. at 66. Nonetheless, the contract was also
marked as evidence.

It is a basic tenet of constitutional law that warrantless
searches are presumed unreasonable and that absent probable
cause and exigent circumstances the Fourth Amendment bars
warrantless searches. United States v. Tibolt, 72 F.3d 965 (1st
Cir. 1995). However, "[t]he Fourth Amendment's protection
against unreasonable searches and seizures applies only to
government action and not 'to a search or seizure, even an
unreasonable one, effected by a private individual not acting as
an agent of the Government.'" United States v. Silva, 554 F.3d
13, 18 (1st Cir. 2009) (citing United States v. Jacobsen, 466
U.S. 109, 113 (1984)). If, on the other hand, a private citizen
is acting as an agent of the Government the Fourth Amendment's
protection against warrantless searches is activated.

The First Circuit has identified three factors as
potentially relevant in identifying whether a person acted as a
Government agent when performing a search. These are: "the

extent of the Government's role in instigating or participating in the search; its intent and the degree of control it exercises over the search and the private party, and the extent to which the private party aims primarily to help the government or to serve its own interests." United Silva, 554 F.3d at 18 (citing United States v. Pervaz, 118 F.3d 1, 6 (1st Cir. 1997)). These factors, however, do not represent all of the elements that must be present or that may be relevant in a particular case. The First Circuit noted in Pervaz, that "any specific 'standard' or 'test' is likely to be oversimplified or too general to be of help." Pervaz, 118 F.3d at 15. Even though Silva's language implies active participation, there is a grey area between overt Government participation and complete absence of participation that should be resolved on a case-by-case basis. United States v. Walther, 652 F.2d 788, 791 (9th Cir. 1981).

It must be noted that in most cases where courts have found that a private citizen was not acting as an agent of the Government, the private citizen has not been a contracted confidential source. In Silva the private citizen was Silva's own brother, who was also a victim of his fraudulent shenanigans and performed the search with the intent of clearing his name. Silva, 554 F.3d 19. In Pervaz the private citizens were employees of a telephone company who took it upon themselves to use a tracking device to pinpoint the location of Pervaz, who

was stealing cell phone signals. See also <u>United States v.</u>
<u>Mendez-de Jesus</u>, 85 F.3d 1 (1st Cir. 1996) (private citizens who
picked up and took illegal aliens to a police station were not
agents of the Government); <u>United States v. Boyd</u>, 2008 U.S. App.
LEXIS 23155 (employee of a shipping company who opened a package
was not an agent of the Government); <u>United States v. Momoh</u>, 427
F.3d 137 (1st Cir. 2005)(employee of a shipping company who
opened a package was not an agent of the Government); <u>United</u>
<u>States v. Steiger</u>, 318 F.3d 1039 (11th Cir. 2003) (hacker and
amateur pedophile hunter from Turkey who provided anonymous
information via e-mail to the police in Alabama was not an agent
of the Government); <u>United States v. Jarrett</u>, 338 F.3d 339 (4th
Cir. 2003); (same anonymous hacker from <u>Steiger</u> who provided
information regarding another pedophile's online activities
seven months after last contact with the Government was not its
agent); <u>United States v. Malbrough</u>, 922 F.2d 458 (8th Cir. 1990)
(private citizen who was told by police to participate in drug
purchases but instead searched a trailer was not an agent of the
Government).

    In the case at bar, the Government argues that Semidey
Morales was acting as a private citizen when she searched and
seized the items in question and alleges that the DEA "did not
know of, instigate, direct, nor participate in any of the
disputed searches." (Docket No. 421, p. 6). It also avers that

she was motivated by multiple factors including avoiding
prosecution for herself and receiving compensation for her
efforts. Id. Defendant, on the other hand, posits that there
could be no doubt that Semidey Morales was acting as a
government agent because she was asked to go out and get
specific information with the knowledge she would be living in
Defendant's home and that she would have the facility to obtain
the information being particularly sought. (Docket No. 422, pp.
8-9).

During the suppression hearing, it was established that
Semidey Morales decided to enter into the Confidential Source
Agreement for several reasons, including her fear of being
prosecuted and in order to receive monetary compensation. (TR
02/24/2010, Docket No. 418, pp. 15-16). Both of these reasons
are ultimately dependent upon the amount of benefit the
Government derived from her assistance and, therefore, it is
understood that her actions were motivated by the desire to help
the Government. However, a mechanical application of the other
potentially relevant factors described in <u>Pervaz</u> would not
properly address all the pertinent circumstances and, as noted
by the First Circuit in said case, are of little help here.
While there is no evidence to establish that the DEA overtly
instigated the warrantless seizure of the items in question, it
was established during the hearing that it specifically ordered

Semidey Morales to go out and get the evidence and that it knew she would have complete access to Defendant's property. TFA Iglesias testified that the day she signed the Confidential Source Contract, "[s]he said she was going to move to his house to be able to be closer to him and obtain more information." (TR 02/23/2010, Docket NO. 418, p. 18). To questions posed by Defendant's counsel he also testified:

> Q. Okay. So, you execute the contract October 22 and when you're finishing up the meeting with her you tell her "now, I want to you go out and I want you to get me financial information, information on properties, telephone numbers of associates and related things", correct?
> A. According to the facility that she had.
> Q. Okay. But that's what you told her to go out and get, those very things, correct?
> A. Correct. All that is included in the investigation.
> Q. And there's no doubt in your mind she understood that what you wanted her to go out and get were those things, correct?
> […]
> THE WITNESS: Correct.
> (TR 2/23/2010, Docket No. 418, pp. 52-53).

TFA Iglesias also testified that he did not even attempt to explain to Semidey Morales any part of the Confidential Source Agreement, notwithstanding the fact that these are clearly extraordinary circumstances because the agency knew she was going to have constant and ample opportunity to obtain physical evidence. It is also undeniable that the DEA, as Defendant

argues, at least tacitly approved the continuance of Semidey
Morales's commission of adultery (a misdemeanor under Puerto
Rico law) because it knew she was married to another man. Even
though the above cited clause of the Confidential Source
Agreement clearly states that Semidey Morales could not
"initiate or instigate a plan or strategy to commit a federal,
state, or local offense," TFA Iglesias testified that they never
discussed the fact that by moving in with Defendant she would be
intensifying her criminal activity because, "[t]hat is her
private life. And we cannot interfere with private lives." Id.
at 60.

In sum, because the DEA did not explain any part of the
Confidential Source Agreement and did not even take any minimal
precautionary measures to ensure that the person who would be
its eyes and ears within Defendant's home would not also cross
the line and seize the physical evidence they specifically
instructed her to seek, it deliberately turned its back to the
more than potential violation of Defendant's Fourth Amendment
rights. This is exactly the type of grey area case described in
Walther, where the Governments acquiescence amounted to
precisely the type of Government participation that triggers the
activation of the Fourth Amendment protection.

Therefore, the Court finds that Semidey Morales was
acting as a Government agent when she seized the documents that

she provided to the DEA on October 25 and 28, 2004 and not only when she searched Defendant's vehicle and seized the firearm in January 2005. The Magistrate Judge erred in attempting to distinguish both scenarios and finding that in the first two instances in October 2004, Semidey Morales's actions were not anticipated by law enforcement. The Court will not endorse the DEA's use of the virtual "don't ask don't tell policy" it employed in this case to sign up an informant who practically moved into Defendant's home and seized his personal property before the ink on the Confidential Source Agreement was even dry. Doing so would imply that the Court is willing to turn its back on this type of distressing attitude on the part of law enforcement towards the Fourth Amendment rights of citizens.

## CONCLUSION

For the reasons stated above, the Court hereby **ADOPTS** in part and **REJECTS** in part the Magistrate Judge's Report and Recommendation (Docket No. 423) and, accordingly, **DENIES** the Motion to Suppress Physical Evidence- Search of Black Chrysler Sedan Bearing Puerto Rico License Plate GIG-001 (Docket No. 284) and the Motion to Suppress Physical Evidence- Search of Farm (Docket No. 331), and **GRANTS** the Motion to Suppress Physical Evidence- Residence Search(es) (Docket No. 283) and the Motion

to Suppress Physical Evidence- Firearm and Ammunition (Docket No. 286).

IT IS SO ORDERED.

In San Juan, Puerto Rico this 2nd day of May, 2011.


                                        s/ Jay A. García Gregory
                                        JAY A. GARCIA GREGORY
                                        U.S. DISTRICT JUDGE