IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| United States of America,<br><br>**Plaintiff**<br><br>v.<br><br>Edison Burgos Montes, <u>et al.</u>,<br><br>**Defendant(s)** | **CIVIL NO.** 06-009-01 (JAG) |

**OPINION AND ORDER**

Before the Court stands the government's memorandum of law relating to the selection of an impartial jury in a capital case (Docket No.542), as well as the Edison Burgos Montes' ("Defendant") response thereto. (Docket No. 554). For the reasons outlined below both motions are **NOTED**. Furthermore, the Court concludes that questions regarding mitigating and aggravating factors are permissible during *voir dire*.

**BACKGROUND**

The Court is at the beginning of the second stage of what promises to be a lengthy and contested *voir dire* process in this capital case. The Court has established a two-part procedure for *voir dire*. First each potential juror fills out an extensive questionnaire. Said questionnaire includes standard *voir dire* questions, questions about personal history, and opinions

regarding the death penalty. The second part of the *voir dire* involves direct questioning by the Court. These questions involve the death penalty and exposure to pretrial publicity.

The government has submitted a motion seeking to limit the areas of inquiry. The government posits that the areas of inquiry need not include case-specific questions. In contrast, Defendant seeks that they be allowed to ask venirepersons questions on mitigating and aggravating factors.

## ANALYSIS

The *voir dire* process serves the critical purpose of ensuring that a criminal defendant enjoys a fair trial and impartial jury. See Morgan v. Illinois, 504 U.S. 719, 729 (1992)(stating that "part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors.)(citing Dennis v. United States, 339 U.S. 162, 171-172 (1950); Morford v. United States, 339 U.S. 258, 259 (1950)).

The Supreme Court stated in Uttecht v. Brown, 551 U.S. 1, 9 (2007), that a criminal defendant has the right to an impartial jury drawn from a *venire* that has not been tilted in favor of capital punishment by selective prosecutorial challenges for cause (quoting Witherspoon v. Illinois, 391 U.S. 510 (1968)).

In Morgan, the Supreme Court considered whether or not a trial court may refuse to ask reverse-Witherspoon questions upon

the request of defense counsel. 504 U.S. at 724. A reverse-Witherspoon question asks whether a juror would automatically impose a death sentence after conviction. Id. "[T]he proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment ... is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Morgan v. Illinois, 504 U.S. at 728 (citing Wainwright v. Witt, 469 U.S. 412, 423 (1985). Thus, a juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and must be removed for cause. Morgan v. Illinois, 504 U.S. at 729. The Supreme Court also stated that a juror who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do. Id. Thus, the baseline rule is that a court appropriately may excuse a juror for his views on capital punishment if those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. United States v. Sampson, 486 F.3d 13 (1st Cir. 2007)(citing Adams v. Texas, 448 U.S. 38, 45 (1980))(quotations omitted). However, "those who firmly believe that the death penalty is unjust may nevertheless serve as

jurors in capital cases." Id. (citing Lockhart v. McCree, 476 U.S. 162, 176 (1986). "But that license is not unqualified: the ability of such jurors to serve depends upon whether they are able to subrogate their own beliefs to the need to follow the court's instructions." Id.

The Court does not need to find that a juror's bias has been demonstrated with unmistakable clarity. Witt, 469 U.S. at 424. A court must carefully examine all of a prospective juror's responses "culminating in a finding by the trial judge concerning the venireman's state of mind." Id. at 428. Thus, demeanor plays a fundamental role in determining juror credibility and determining what a venireperson is saying. Id.; see also Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981).

Morgan promotes that the Court ask qualifying questions that extend beyond general "follow-the-law" questions. Defendant's counsel have requested that they be allowed to include case-specific questions regarding aggravating and mitigating factors. The government strongly objects to this line of questioning and firmly bases its argument on United States v. McVeigh, 153 F.3d 1166 (10th Cir. 1998). The McVeigh court stated that the court stated that "Morgan is designed to illuminate a juror's basic beliefs ... not to allow defendants

Criminal Case No. 06-009 (JAG)                                    5

to pre-determine jurors' views of the appropriate punishment for the particular crime." Id. at 1208.

This Court disagrees with the premise espoused in McVeigh and concludes that the discussion in United States v. Fell, 372 F.Supp.2d 766, 769 (D.Vt. 2005), is accurate. In Fell, the district court concluded that Morgan supports the use of case-specific questions in some circumstances. Id. "The entire premise of the Morgan decision is that highly general questions may not be adequate to detect specific forms of juror bias. See 504 U.S. at 734-36. Thus, Morgan suggests that, in appropriate circumstances, the parties should be allowed to ask more specific questions to investigate potential bias." Id.

The jurisprudence on *voir dire* makes it clear that it is a matter in which the trial court has extremely broad discretion. Moreover, the available caselaw is clear that general questions may be insufficient to investigate the depths of juror bias. See Morgan, 504 U.S. at 734-36. "These principles suggest that, rather than reject all case-specific questions, a trial court should allow such questions to be asked when they are reasonably directed toward discovering juror bias." Fell, 372 F.Supp.2d at 770.

Some courts have simply excluded case-specific questions on the ground that they are stake-out questions. See Richmond v. Polk, 375 F.3d 309, 329-31 (4th Cir.2004); McVeigh, 153 F.3d at

1207-08. However, the Court does not believe that all case-specific questions are stake-out questions. "There is a crucial difference between questions that seek to discover how a juror might vote and those that ask whether a juror will be able to fairly consider potential aggravating and mitigating evidence. For example, a juror may not be asked whether evidence of rape would lead him or her to vote for the death penalty. However, a juror may be asked if, in a murder case involving rape, he or she could fairly consider either a life or death sentence. The first question is an improper stake-out question. The second question is not a stake-out question because it only asks whether the juror is able to fairly consider the potential penalties." Fell, 372 F.Supp.2d at 771. The Court notes that any questions that ask the potential juror to precommit to how that juror may vote are stake-out question and are impermissible.

If properly formulated, case-specific questions may highlight juror bias. An example of such a question is a scenario in which a person would not consider any mitigating evidence in some circumstances, such as in the death of a child. Furthermore, a juror may be biased in considering mitigating evidence pertaining to the Defendant's background or upbringing.

As a result, the Court finds that during *voir dire* Defendant's counsel should be allowed to properly inquire about

Case 3:06-cr-00009-JAG   Document 558   Filed 04/07/12   Page 7 of 7
Criminal Case No. 06-009 (JAG)                                        7

the jurors' ability to consider mitigating and aggravating factors.

## CONCLUSION

In light of the foregoing, the Court **NOTES** the motions submitted by the government and the Defendant. The Court finds that case-specific questions are sometimes necessary and useful. However, the Court will disallow questions that seek solely to educate the jurors or that seek that jurors commit to a particular point of view. The Court must find a balance between discovering biased jurors and staking-out jurors' opinions. Thus, the Court will allow questions that are reasonably directed towards discovering whether the juror will be able to fairly and impartially weigh aggravating and mitigating factors. Any questions that attempt to commit the juror to a particular position will be struck.

IT IS SO ORDERED.

In San Juan, Puerto Rico this 7th day of April, 2012.

                                      s/ Jay A. García Gregory
                                      JAY A. GARCIA GREGORY
                                      U.S. DISTRICT JUDGE